UNITED STATES, Appellee

v

BURTON E. TELLIER, Master Sergeant,
U. S. Air Force, Appellant

13 USCMA 323, 32 CMR 323

No. 15,847

October 19, 1962

*Major William A. Crawford, Jr.*, argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph E. Krysakowski* and *Charles Joseph Smith, Esquire.*

*Lieutenant Colonel Simpson M. Woolf* argued the cause for Appellee, United States. With him on the brief was *Colonel Merlin W. Baker.*

### Opinion of the Court

FERGUSON, Judge:

Upon a rehearing conducted before a general court-martial appointed by the Commander, 41st Air Division, and meeting at Yokota Air Force Base, Japan, accused was found guilty of graft, in violation of Uniform Code of Military Justice, Article 134, 10 USC § 934. He was sentenced to dishonorable discharge, forfeiture of all pay and allowances, and reduction to the grade of airman basic. The convening authority approved the findings and sentence and, with one member dissenting, the board of review affirmed. We granted accused's petition for review on the following assignments of error:

"THE LAW OFFICER ERRED IN NOT GRANTING A CONTINUANCE TO ENABLE THE DEFENSE TO OBTAIN SUITABLE MILITARY COUNSEL.

"THE LAW OFFICER ERRED IN ADMITTING, OVER DEFENSE OBJECTION, THE TESTIMONY OF THE GOVERNMENT WITNESS TANAKA AND ALSO PART OF THE TESTIMONY OF HIROTA BASED ON THE SO-CALLED 'PLAN OR DESIGN' RULE.

"THE CONVENING AUTHORITY'S FAILURE TO ACT ON THE PRETRIAL REQUEST FOR A CONTINUANCE, HIS FAILURE TO INSURE THE AVAILABILITY OF MAJOR KENNEDY TO ASSIST IN THE PRETRIAL PREPARATION OF THE ACCUSED'S DEFENSE AND HIS ELEVENTH HOUR REMOVAL OF MAJOR KENNEDY AS APPOINTED DEFENSE COUNSEL CAST A SHADOW OF UNFAIRNESS OVER THE ENTIRE PROCEEDING, AND OPERATED TO

DENY THE ACCUSED VALUABLE PRE-TRIAL AND TRIAL RIGHTS TO WHICH HE WAS CLEARLY ENTITLED."

In view of our disposition of the case, we concern ourselves only with the two intertwining allegations that accused was deprived of the services of his appointed defense counsel. It is necessary, however, to refer in some detail to the factual background depicted in the record of trial in order to establish the exact nature of the problem before us.

Accused was originally brought to trial before a general court-martial on March 1, 1960. He elected to be defended by Mr. Charles Smith, a civilian attorney, with whom appointed military defense counsel, First Lieutenant Melvin W. B. Mathes, was to be associated. As Mr. Smith was not then present or, according to appointed counsel, prepared to proceed, an appropriate continuance was granted with direction that, in the interim, the oral depositions of certain prosecution witnesses be taken without the presence of Mr. Smith. Subsequently, these depositions were received in evidence over defense objection. Accused was convicted, sentenced, and the sentence approved by the convening authority. Because of the use of the depositions, the board of review found prejudicial error to exist and ordered a rehearing.

On February 21, 1961, another general court-martial was appointed for the purpose of rehearing the case. Major John E. Kennedy was designated as appointed defense counsel and First Lieutenant Arthur Y. Muraoka as appointed assistant defense counsel. Trial counsel coordinated service of charges with Major Kennedy. On April 10, 1961, accused's case was withdrawn from the court so appointed and referred to another general court-martial for trial. The new appointing orders designated Lieutenant Muraoka as the sole appointed member of the defense.

The cause came on for trial the following day. Present for the defense were Lieutenant Muraoka, Mr. Smith, and a Mr. Scolinos. Mr. Smith immediately objected to the relief and absence of Major Kennedy, stating that the accused desired to retain him as associate counsel. He declared that he had taken the orders "at face value" and had written Major Kennedy on or about March 20, 1961, "sending him practically everything I had on this record with a letter welcoming him to our fold and telling him to please study this, familiarize himself with it and later on we would get together." He then moved that the case be put over until Major Kennedy was again available to serve. In reply, the trial counsel advised the court he had been informed that Major Kennedy was absent from Japan on an extended operational commitment. Mr. Smith rejoined that "All my papers, my former record of trial and everything—I have been unable to read them because they have been resting on Major Kennedy's desk." He stated that, with approximately two weeks' notice, the defense would have been able to proceed. They had nonetheless been first informed on the previous evening that Major Kennedy had been relieved as a member of the defense.

Appellate Exhibit A, a letter from Mr. Smith to the convening authority, dated April 5, 1961, was produced by the Government. In it, Mr. Smith stated that he had been attempting without success to contact Major Kennedy personally. He was advised on March 22, 1961, that Kennedy was absent on temporary duty and the date of his expected return was unknown. On April 4, 1961, Mr. Smith learned that Major Kennedy was still absent. In view of the circumstances and the desire to have Kennedy participate in the defense, he requested that the proposed rehearing be deferred until his return, proposing the date of May 8, 1961, as convenient to the defense.

On April 6, 1961, trial counsel wrote Mr. Smith that he had been directed by the staff judge advocate to inform him that any request for a continuance due to Major Kennedy's absence should be addressed to the court. Trial counsel further alleged that he also did not learn of Kennedy's continued absence until "late yesterday afternoon."

In an attempt to clarify the situa-

**325**

tion, the law officer made inquiry as follows:

"LO: Is your present motion one for continuance or that Major Kennedy be made available?

"MR. SMITH: Sir, we don't demand the moon, but until this thing is straightened out, until Major Kennedy's return, or some other associate ranking military counsel is made available, but we prefer what we started out with—Major John E. Kennedy."

The law officer denied the motion. Subsequently, Lieutenant Muraoka was excused, as he was not prepared to participate in the case in view of the press of his duties "or for other reasons, relying perhaps on Major Kennedy's presence." In fairness to the lieutenant, Mr. Smith went on to declare, in so releasing him:

"MR. SMITH: No, there is no intimation made that Lt Muraoka has fallen down in his duties. We never contacted the man. I never contacted him. It was Major Kennedy I was relying on, and I never expected Lt Muraoka to get down through the hard facts of this case. He is absolutely in the clear as far as his own freedom from negligence is concerned. Actually, sir, we could not have brought him in."

The motion for a continuance until Major Kennedy was made available or until the defense was furnished with counsel "equally ranking . . . [or] one as equally experienced" as trial counsel was twice renewed and denied. Subsequently, civilian counsel conducted the accused's defense without the assistance of any military counsel, obtaining the result set out above.

At the outset, we pause to dispose of the Government's contention that the accused did not desire the ▌ services of Major Kennedy *per se* but was interested only in securing the attendance as appointed defense counsel of an officer of equivalent rank. We do not so read the transcript. Rather, we believe that civilian counsel made crystal clear before the trial and after the court had

convened his desire for the services of Major Kennedy as associate counsel. His statements concerning the possible substitution of another experienced attorney, prefaced as they were by the declaration that "we don't demand the moon," indicated immediately accused's insistence on the presence of Major Kennedy but, in order to expedite the proceedings, a willingness to compromise if an officer of equal qualifications was furnished and time afforded to prepare a composite presentation of the case.

Reduced to its simplest terms, the issue before us is whether the United States may, consistently with the Uniform Code of Military Justice, appoint certified military counsel for an accused; continue him in the case until the evening before the trial; relieve him because of other assigned duties, replacing him with another officer; and refuse to put the case over until the original counsel's return or until some opportunity has been afforded for the new counsel to assist in the preparation of the defense case. The very statement of the proposition bears within it the seeds of its answer.

Code, supra, Article 38, 10 USC § 838, provides pertinently:

"(b) The accused has the right to be represented in his defense before a general or special court-martial by civilian counsel if provided by him, or by military counsel of his own selection if reasonably available, or by the defense counsel detailed under section 827 of this title (article 27). *Should the accused have counsel of his own selection, the defense counsel, and assistant defense counsel, if any, who were detailed, shall, if the accused so desires, act as his associate counsel; otherwise they shall be excused by the president of the court."* [Emphasis supplied.]

The provision for appointment of military counsel and his association with individually selected ▌ counsel constitutes a reenactment of Article 17, 10 USC (1946 ed) § 1488. Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Ses-

sion, page 1022. From the beginning, it has been understood to confer upon the accused, as a matter of right, the privilege of having appointed military counsel represent him in addition to any individually selected attorney, military or civilian. Manual for Courts-Martial, U. S. Army, 1928, paragraph 45a; Manual for Courts-Martial, U. S. Air Force, 1949, paragraph 45a; Manual for Courts-Martial, United States, 1951, paragraph 48a. Indeed, the language of the Article, supra, admits of no other construction.

In United States v Abernathy, 1 CMR 802, an Air Force board of review pointed out, at page 805:

"This provision [of Code, supra, Article 38] ensures free choice of election to the accused *to be represented by individual counsel, appointed counsel or all.*" [Emphasis supplied.]

And in United States v Velarde, 63 BR 237, an Army board of review concluded, with respect to Article of War 17, at page 239:

". . . By providing that the accused who provides counsel of his own selection might if he desired have the defense counsel or assistant defense counsel act as his associate counsel the Congress must be held to have had the intent that such defense counsel or assistant defense counsel should be available, otherwise the provision is meaningless."

According weight to these authorities and to the clear and unequivocal command of the statute's language, we must necessarily conclude that an accused is entitled as a matter of right to the association of his appointed defense counsel with his individually employed attorneys.

Turning to the facts before us, it is certain that this accused was, under the circumstances, effec-tively deprived of that right. Almost a month prior to the trial, his individual counsel sought to contact Major Kennedy and left at his office the papers and records in the case. Due to his continued absence on temporary duty, however, no consultation or preparation was possible. When it appeared that this situation might continue until the date set for the actual trial to commence, counsel timely moved the convening authority for a delay in the proceedings until Kennedy's return. Although Kennedy's absence and the desire for his services were thus expressly made known, no effort was made to replace him until the evening before the court-martial convened—a new appointment which the Government admits was at the "eleventh hour."

The right to services of counsel is substantial and extends both to the pretrial and the trial proceedings. Cf. United States v Nichols, 8 USCMA 119, 23 CMR 343; United States v Gunnels, 8 USCMA 130, 23 CMR 354. As Mr. Justice Sutherland noted in Powell v Alabama, 287 US 45, 77 L ed 158, 53 S Ct 55 (1932), at page 59:

". . . The prompt disposition of criminal cases is to be commended and encouraged. But in reaching that result a defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense. To do that is not to proceed promptly in the calm spirit of regulated justice but to go forward with the haste of the mob.

"As the court said in Com. v O'Keefe, 298 Pa 169, 173, 148 Atl. 73, 74:

'It is vain to give the accused a day in court, with no opportunity to prepare for it, or to guarantee him counsel without giving the latter any opportunity to acquaint himself with the facts or law of the case.'"

In the instant case, civilian counsel made it crystal clear to the law officer that they had depended heavily on the services of Major Kennedy as local counsel in executing the challenging process, a practice whose wisdom every experienced attorney will immediately recognize. Indeed, when Kennedy did not appear, accused revoked his prior election to have enlisted men serve on

**327**

his court-martial. In his pretrial request for such members, he had expressly noted the possibility of such action after consultation with the Major and, at trial, his civilian counsel felt, absent Kennedy's specialized knowledge, withdrawal of the request was the only course open to him. We emphasize these factors to point up the importance of appointed counsel's participation in the pretrial preparation of the case under an accused's clear statutory right to such association with individual counsel prior to the actual hearing.

The Government does not seem seriously to urge that Lieutenant Muraoka's substitution at the ▆▆▆▆▆▆▆ last moment as appointed counsel was sufficient to overcome the deprivation of Kennedy's services. See Powell v Alabama, supra. Nor could we accept such a proposition in view of the assumption by all concerned that Kennedy would be available and Muraoka's understandable failure to make any preparation to assist in accused's defense. And to accord that effect to the right to appointed counsel's services would reduce Code, supra, Article 38, to a hollow mockery, for it would mean, as here, the Government could, for good reasons or bad, deny an accused any opportunity to consult with appointed counsel or to have his assistance at all until the very commencement of the trial and then, as a cure-all, thrust upon him the services of another attorney entirely unfamiliar with the proceedings.

In short, as we view this record, the convening authority originally had two possible courses of action ▆▆▆▆▆▆▆ open to him. When it first came to his attention that Major Kennedy was otherwise employed, he might appropriately have relieved him for good cause and appointed new counsel to represent the accused in association with individual counsel. Cf. United States v Boysen, 11 USCMA 331, 29 CMR 147; United States v Greenwell, 12 USCMA 560, 31 CMR 146. He might also have determined to retain Kennedy in the case and granted the delay requested on April 4 until his return. His failure to follow either route until Muraoka's appointment the evening before trial, compounded as it was by the law officer's subsequent refusal to grant any delay in the case, effectively deprived the accused of the services of appointed counsel both in the pretrial and trial phases of the case.

In so concluding, we impute no bad faith to anyone connected with these proceedings. Indeed, from the record, it appears that all parties to the trial proceeded upon the assumption that Major Kennedy would actually return from his other assignment prior to the trial. When he did not do so, paramount consideration was given to expedition of the hearing rather than to accused's rights under Code, supra, Article 38. A few days' delay, in light of accused's timely request, would have been relatively unimportant and, we suggest, might have avoided this appeal. More importantly, the entire controversy would not have arisen had attention been paid to the important role of accused's appointed defender and the need for his relief or return as the trial date drew near. We cannot, however, brush aside the Government's nonperformance of its duty when it was diligently and repeatedly reminded of it by civilian counsel at every stage of the proceedings.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Air Force. A rehearing may be ordered.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):

The principal opinion mistakes the issue when it says it includes a refusal "to put the case over . . . until some opportunity has been afforded for . . . new counsel to assist in the preparation of the defense case." If that were the situation, I would join in reversing the accused's conviction. But that is not the case. Civilian counsel clearly and unqualifiedly indicated he did not want a continuance to permit the appointed defense counsel, Lieutenant Muraoka, to familiarize himself with the case for the purpose

of participating in the defense. On the contrary, he iterated and reiterated the claim that he wanted to get "this thing . . . straightened out," by which he meant, he wanted an appointed defense counsel "equally ranking . . . [or] one as equally experienced" as trial counsel, who was a Major.

If we look at the bare bones of the appointment of counsel, the Uniform Code was complied with; that is, the accused was assigned military counsel, and he expressly excused him from further participation in the case. If we add to this skeleton the flesh of the surrounding circumstances, we have more to consider.

Success or failure at trial may depend on the degree of preparation for trial. Circumstances which justify last minute substitution of court members, or the law officer, may not necessarily justify removal of appointed defense counsel who has engaged actively in preparation of the case. Cf. United States v Boysen, 11 USCMA 331, 29 CMR 147; United States v Grow, 3 USCMA 77, 11 CMR 77; United States v Whitley, 5 USCMA 786, 19 CMR 82. Once entered into, the relationship between the accused and his appointed military counsel should not be severed or materially altered for administrative convenience. Appointed military defense counsel is a part of the defense team; and there are cogent reasons which may lead an accused to request that he be associated with civilian defense counsel. Unjustified interference with the joint endeavors of appointed and selected defense counsel may be prejudicial to the accused. Consequently, a formal and technical designation of military defense counsel may hardly satisfy the substance of accused's right to be represented by both a civilian lawyer and appointed defense counsel. In the absence of unusual and compelling circumstances, therefore, I would not look with favor upon the appointment of new military counsel on the eve of trial. Scrutiny of the record in this case, however, convinces me there is a total absence of any risk of prejudice to the accused.

Major Kennedy did not in fact take any part in the preparation of the case. It is undisputed that he was absent from the command at all times material to the issues before us. It is also undisputed that his absence was occasioned by legitimate command reasons, and not by any ulterior motive to deprive the accused of his services. In addition, the accused's civilian lawyers, who described themselves as "chief counsel" and "associate counsel," respectively, had represented the accused at the previous trial of the case, and on the review by the board of review. Patently, they were thoroughly informed about the case and experienced in courts-martial procedures.

As to Lieutenant Muraoka's position, the accused had no right to complain about his lesser rank and experience in relation to Major Kennedy or to trial counsel. An accused is entitled to a qualified trial lawyer. Qualification can hardly be predicated only on rank and years of admission to the bar. See Sherman v United States, 241 F2d 329 (CA9th Cir) (1957). True, Lieutenant Muraoka was not very familiar with the case, but the accused did not ask for a continuance on that ground. As I pointed out earlier, Mr. Smith, the accused's "chief counsel," did not desire Lieutenant Muraoka to act as associate counsel. Finally, nothing was offered to show that Major Kennedy was desired as individual military counsel and that he would be available for appointment as such military counsel on his return. On the facts before him, therefore, the law officer had ample reason to overrule the defense objection to the substitution of appointed counsel on the grounds presented by the "chief" defense lawyer. The record clearly shows the accused was represented by competent and fully-prepared civilian lawyers of his own choice; and that he voluntarily and with full knowledge of the material circumstances excused his appointed military counsel from further participation in the case.

I have examined the claim of error as to the admission of certain testimony. I am satisfied that if there was error, the error did not prejudice the accused. I would affirm the decision of the board of review.