**UNITED STATES**

v.

**Private (E–2) Roger D. MILLER, 342–44–9297, US Army, Headquarters, Headquarters Company, 649th Engineer Battalion (TOPO), APO New York 09081.**

**SPCM 11424.**

U. S. Army Court of Military Review.

Sentence Adjudged 14 April 1975.

Decided 27 Feb. 1976.

Appellate Counsel for the Accused: CPT Peter V. Train, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT John F. Schmutz, JAGC; CPT John F. DePue, JAGC; MAJ John T. Sherwood, Jr., JAGC.

**OPINION OF THE COURT**

COOK, Judge:

· The appellant was tried for an attempt to sell marijuana (a violation of Article 80, Uniform Code of Military Justice, (UCMJ), (10 U.S.C. § 880)), for wrongful possession of marijuana and for the wrongful introduction of marijuana into a military post (these are both violative of Article 134, UCMJ (10 U.S.C. § 934)). Although he plead not guilty to all charges, appellant was found guilty of the attempted sale and of the possession and was sentenced to the approved sentence noted above.

The courtroom portion of appellant's trial, which was conduced in Mannheim, Germany, was concluded on 14 April 1975. His appointed defense counsel, who acted as his sole legal representative throughout the trial, was Captain Pangburn. Shortly after

the termination of the trial, Captain Pangburn was reassigned to Fort Gordon, Georgia.

The staff judge advocate's review, required by Article 65(b), UCMJ, and paragraph 85*b*, Manual for Courts-Martial, United States, 1969 (Revised edition) (MCM 1969 (Rev), was completed on 6 June 1975. On 10 June 1975, Captain Sano, the Chief Defense Counsel in the staff judge advocate's office, "was served with the post-trial review and was requested to sign for its receipt, which was accomplished. No notification was given reference the Miller post-trial review to Captain Pangburn."[1] Captain Sano submitted nothing in response to this service other than an acknowledgement of receipt. The convening authority took his action on 16 June 1975.

Appellant contends that he was substantially prejudiced by the failure of the staff judge advocate to comply with the mandate of *United States v. Goode,* 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975), in that a copy of the post-trial review was served on someone other than his trial defense counsel.

█ The right of a defendant to be represented by counsel is basic to the military justice system.[2] "The right to services of counsel is substantial and extends both to the pretrial and the trial proceedings."[3] Further, "a defense counsel's duty to represent an accused does not end with the court-martial findings."[4] In point of fact, paragraph 48*k*, MCM 1969 (Rev), specifies five separate tasks under the heading "Counsel for the Accused—*Duties After Trial.*" (Emphasis added).

It was precisely for the purpose of enabling the defense counsel to more effectively perform some of these post-trial duties that two of the precursor cases to *United States v. Goode, supra,* strongly recommended the adoption of the practice of serving a copy of the post-trial review on counsel for the accused.[5] The court's opinion in *United States v. Goode, supra,* has added another post-trial task for the defense counsel to perform, that is, to comment upon the post-trial review.

█ The military justice practice does not permit a system of substitution of appointed counsel at the whim of the convening authority.[6] And while entitlement to a particular counsel is not absolute,[7] "(o)nce entered into, the relationship between the accused and his counsel may not be severed or materially altered for administrative convenience."[8]

█ As Captain Pangburn's "relief" as defense counsel was for the same administrative convenience as was condemned in *United States v. Murray,*[9] i. e., reassignment orders, that explanation will not suffice as a reason to replace him with Captain

1. Quotation is from affidavit submitted by Captain Sano.

2. *United States v. Mickel,* 9 U.S.C.M.A. 324, 26 C.M.R. 104 (1958); *United States v. Clay,* 1 U.S.C.M.A. 74, 1 C.M.R. 74 (1951); Article 38(b), UCMJ.

3. *United States v. Tellier,* 13 U.S.C.M.A. 323, 327, 32 C.M.R. 323, 327 (1962).

4. *United States v. Darring,* 9 U.S.C.M.A. 651, 653, 26 C.M.R. 431, 433 (1958). The court clearly meant post-trial, as opposed to just post-*findings* duties, as the case was concerned with defense counsel's obligation to advise his client concerning his appellate rights in accordance with paragraph 48*j* (3), MCM 1951 (now 48*k* (3), MCM 1969 (Rev ed)); *United States v. Clemens,* 34 C.M.R. 778 (A.F.B.R.1963); *United States v. Casey,* 20 C.M.R. 853 (A.F.B.R.1955); *United States v. Draper,* 20 C.M.R. 743 (A.F.B.R.1955).

5. *United States v. Beatty,* 10 U.S.C.M.A. 311, 27 C.M.R. 385 (1959); *United States v. Vara,* 8 U.S.C.M.A. 651, 25 C.M.R. 155 (1958).

6. *United States v. Tellier, supra; United States v. Eason,* 21 U.S.C.M.A. 335, 45 C.M.R. 109 (1972).

7. *United States v. Stanten,* 21 U.S.C.M.A. 431, 45 C.M.R. 205 (1972); *United States v. Massey,* 14 U.S.C.M.A. 486, 34 C.M.R. 266 (1964).

8. *United States v. Murray,* 20 U.S.C.M.A. 61, 62, 42 C.M.R. 253, 254 (1970).

9. *Id.*

Sano.[10]  No good cause having been shown for disturbing this attorney-client relationship, we need not test for prejudice.[11]

Assuming arguendo that Captain Pangburn's relief was for good cause, the manner of the substitution of Captain Sano made it ineffective.  As the United States Court of Military Appeals said in *United States v. Miller,* 7 U.S.C.M.A. 23, 21 C.M.R. 149 (1956):

> "There is more to creating the relationship of attorney and client than the mere publication of an order of appointment, and we have so suggested in an earlier opinion.  An accused's right to a counsel of his own choice, and the necessity of a finding that he has consented to representation by appointed counsel, was recognized by this Court in *United States v. Goodson,* 1 U.S.C.M.A. 298, 3 C.M.R. 32, where we said: 'He [the accused] is entitled to select counsel of his own choice, and may object to being defended by the person appointed if he desires to do so.' The relationship between an attorney and client is personal and privileged.  It involves confidence, trust and cooperation.  Where counsel is appointed to represent one charged with an offense, the offender is entitled to protest, if the lawyer selected is objectionable to him.  In the military system, if an accused has just cause for complaint against his defender, such as hostility or incompetency he is entitled to request the appointment of other counsel.  Furthermore, he is entitled to reject the services of appointed officers and employ, at his own expense, the services of civilian counsel.  It may be that where an accused does not retain the services of civilian counsel, or prevail upon individual counsel to undertake his defense, or object with good cause to the representation by counsel appointed for him, he is deemed to have concurred in the appointment.  However, that notion of implied consent or acquiescence is not peculiar to the military system, but is operative in every system which relies, in whole or in part, on public defenders or court-appointed counsel.

> We need not concern ourselves with that theory, however, for when it is applied to the facts in the instant case, it is at once apparent that it is not appropriate.  Here we have no way of knowing whether accused was informed that he was being represented by counsel chosen by the convening authority.  He could not consent if he did not know.  Apparently, the military service decided he had no voice in the matter as they chose to ignore him personally."

The court concluded its discussion on this point by stating that, "To bind the accused, we feel that there must be some semblance of acceptance on his part, as representation by total strangers is neither desirable nor fair" and the court declared the acts performed by this "uninvited" counsel a nullity.  *See also United States v. Gaines,* 20 U.S.C.M.A. 557, 43 C.M.R. 397 (1971), which was reversed on other grounds.

There are some disturbing practical considerations which involve the limitations imposed by *Goode* itself.  Under that decision the staff judge advocate may require defense counsel's response to the contents of the post-trial review within a five-day period.  In order to "correct or challenge

---

10.  Impliedly, this opinion has assumed that Captain Sano was properly appointed as a defense counsel for the appellant for the purpose of perusing and commenting on the review. There are, however, no orders to that effect in the record, and all we know of his relationship to this case is what he recited in the quotation in the text to footnote 1, *supra.*  Such an informal designation is not enough to constitute Captain Sano as defense counsel for any purpose.  *United States v. Coleman,* 19 U.S.C.M.A.

524, 42 C.M.R. 126 (1970).  It is also noted that there were over 30 days left from the date the review was completed until the 90-day post-trial *Dunlap v. Convening Authority,* 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974), period had run. This would appear to be ample time for the staff judge advocate to have dealt with Captain Pangburn.

11.  *United States v. Catt,* 23 U.S.C.M.A. 442, 50 C.M.R. 326, 1 M.J. 41 (1975).

any matter he deems erroneous, inadequate or misleading," [12] in the post-trial review, counsel is going to have to be thoroughly conversant with the conduct of the defendant's trial. Substitute defense counsel, unfamiliar as he will be with the actual events of the trial, will have to read the entire record of trial in order to overcome his ignorance and be in a position to perform his *Goode* functions with a modicum of professionalism. Considering the workload most defense counsel carry in the field, undoubtedly this will prove to be an onerous burden, not always capable of accomplishment in the allotted five days. In any case, substitute counsel will hardly be as capable of providing as meaningful a representation as the counsel who actually participated in the events under discussion.

A new post-trial proceeding in which the requirements of *United States v. Goode, supra,* are complied with is mandated.[13]

The action of the convening authority, dated 16 June 1975, is hereby set aside. The record of trial is returned to The Judge Advocate General for a new review and action by a different staff judge advocate and convening authority.[14]

Senior Judge BAILEY concurs.

DeFORD, Judge, dissenting:

I dissent.

The facts in this case are summarized in the majority opinion. My disagreement with the majority lies in the interpretation of the existing case law regarding an accused's right to counsel and its application to the facts in this case.

It has long been established that an accused is entitled to select counsel of his own choice, and may object to being defended by the person appointed for him.[1]

An appointed counsel must be authorized to act for an accused as the relationship between an attorney and a client is personal and privileged. It involves confidence, trust and cooperation. If the lawyer appointed is objectionable, an accused may complain, request another counsel, reject appointed counsel and employ a civilian counsel at no expense to the Government.[2]

The majority's opinion is bottomed upon the premise that the existing case law[3]

---

**12.** *United States v. Goode, supra,* 50 C.M.R. at page 4, 1 M.J. at page 6.

**13.** The court is aware of the decision of a sister panel in *United States v. Iverson,* No. 433471, 2 M.J. 489 (A.C.M.R. 31 Dec. 1975), which is contrary to ours. We simply do not agree.

**14.** For the edification of the author of the new review, an issue has been raised on this appeal concerning the failure of the present review to discuss the affirmative defense of agency, though that defense was raised at trial and instructed upon. In view of our disposition of the case we have not discussed that alleged error. Hopefully, it will be mooted before this Court again, if ever, reviews this record.

**1.** *United States v. Goodson,* 1 U.S.C.M.A. 298, 3 C.M.R. 32 (1952).

**2.** *United States v. Miller,* 7 U.S.C.M.A. 23, 21 C.M.R. 149 (1956).

**3.** *United States v. Darring,* 9 U.S.C.M.A. 651, 26 C.M.R. 431 (1958). In *Darring,* the issue before the court was whether the accused was improperly induced to waive his right to counsel before the Board of Review (now the Court of Military Review). The trial defense counsel advised the accused that there was little purpose in requesting appellate counsel as "there was little" that an appellate defense counsel could do in his behalf. This advice was given pursuant to the trial defense counsel's opinion as to the merits of the accused's case and in accordance with instructions set forth in a DA Pamphlet then in effect. The advice was given prior to the staff judge advocate forwarding his review of the accused's case to the convening authority.

The court held that the defense counsel's advice was premature and that the DA Pamphlet was designed to discourage requests for appellate defense counsel. In addition, the court discussed paragraph 48*j* (3) of the Manual for Courts-Martial, United States, 1951, which then provided that the defense counsel will immediately after trial, advise an accused generally of his appellate rights, saying that the Manual provisions were questionable and that under the circumstances of this case the court was not convinced that the accused made a knowing and informed choice of his right to dispense with appellate counsel. The court *did not* (emphasis supplied) consider whether the trial defense counsel was the only counsel who could perform the post-trial responsibilities nor do the facts in this case warrant even an implication of such a premise.

requires the trial defense counsel who tried the appellant's case, to perform the post-trial responsibilities imposed by the Manual for Courts-Martial as well as other judicially mandated post-trial responsibilities.[4]

Heretofore, the decisions of the United States Court of Military Appeals have mandated that the duties of a trial defense counsel not be ended prior to the termination of the findings and sentence of a courts-martial.[5] However, I do not read *Darring* as requiring more. In a normal situation, an accused is represented by the same defense counsel in all stages of the court-martial proceeding. The facts in this case represent an abnormal situation. The proposition that the trial defense counsel who participated in an accused's trial, must be required to perform the post-trial duties has yet to be mandated.

An examination of the post-trial responsibilities of the defense counsel, in my opinion, does not require such action.

The Manual [6] requires the following post-trial duties to be performed by the defense counsel:

(1) The defense counsel may prepare a clemency petition for the consideration of the reviewing authority;

(2) The defense counsel may, in the event of conviction, file an appellate brief;

(3) The defense counsel will advise the accused of his appellate rights;

(4) The accused will be advised of his right to request deferment of confinement (when applicable); and

(5) The defense counsel may examine the record of trial.

A closer examination of these duties will provide a clearer view of the necessity for the services of the trial defense counsel.

The preparation of a clemency petition and the requirement to advise the appellant of his rights to request deferment of confinement do not, *per se,* require the services of the defense counsel who tried the case.

With regard to the appellate brief, the purpose of this right is threefold. It provides the appellant the opportunity to advise the convening authority, the reviewing authority, and appellate defense counsel of those matters which the appellant and his counsel have determined to be legal or factual errors and the impact of those errors upon an accused.

In each instance, the record of trial has been established and the determination of errors requires a cold analytical legal review of the facts and law as established in the record. It may well be that this review can best be done by one who has not been involved in the actual trial of the case and who reviews the record unfettered by the views and prejudices if any, which may have been created during the actual trial. Certainly, it may be said that a legal review of such character will show the failing of the trial defense counsel if any.

With regard to advising the accused of his appellate rights, the same arguments are equally valid.

The requirement to review the record of trial is another matter entirely. In this instance the purpose of such a review is to insure the truthfulness, completeness and accuracy of the record. Under the Manual provisions [7] the primary responsibility rests with the military judge and the trial counsel. The Manual [8] states, "When undue delay will not result, the trial counsel should permit the defense counsel to examine the record before it is forwarded to the convening authority. . . . If the defense counsel discovers errors or omissions in the record, he should suggest to the trial counsel appropriate changes to make the record

---

4. See footnote 4 of the majority opinion.

5. *United States v. Tellier,* 13 U.S.C.M.A. 323, 32 C.M.R. 323 (1962).

6. Paragraph 48*k*, Manual for Courts-Martial, United States, 1969 (Revised edition).

7. Paragraphs 82*e* and *f*, Manual for Courts-Martial, United States, 1969 (Revised edition).

8. Paragraph 82*e, supra.*

show the true proceedings." As noted above, the defense counsel does not have an absolute right to review the record, and in many instances is unable to make such a review by reason of time restrictions. Therefore, the presence of trial defense counsel is not believed to be required or mandatory.

With regard to the issue concerning whether the attorney-client relationship can be severed for administrative convenience, suffice it to say that the cases cited in the majority opinion all deal with a severance of that relationship prior or during the trial proceedings and are, in my judgment distinguishable and not applicable to the issue presented by the facts in this case.

The final requirement imposed upon the defense counsel is the option of filing a response to the post-trial review or any other matter deemed appropriate.[9] This requirement requires a complete understanding of the case by counsel. The majority opinion points to a situation in which a substitute counsel would "hardly be as capable of providing as meaningful representation as the counsel who actually participated in the events under discussion" and "not always capable of accomplishment within the allotted 5 days," referring to the waiver provision of *Goode, supra.*

In the case before us a little over 30 days remained to process the appellant's case without incurring a *Dunlap* violation. Therefore, it does not appear that any unreasonable burden was placed on Captain Sano. In addition, there are many situations in which a case is returned by The Judge Advocate General to a new convening authority for a new post-trial review and action. In those instances, a defense counsel is designated for the purpose of service of the new post-trial review. This Court, in considering a case of that type stated:

"We are mindful of the fact that an attorney-client relationship was not consummated to the extent of acceptance of Captain Armstrong as his attorney by the appellant or even of an exchange of communications between the two. . . . Although a complete relationship must be developed for representation during the trial itself, we do not believe that the Court of Military Appeals intended such a relationship to be a condition precedent to compliance with *Goode.* Not only would such a requirement do nothing to enhance the rationale behind *Goode,* but mere refusal by an accused person to enter the relationship would throw a proverbial monkey wrench into the machinery of justice."[10]

It should also be noted that with regard to the issue of waiver under *Goode, supra,* the Court stated that failure of counsel to take advantage of the opportunity to challenge the post-trial review or otherwise comment within the five-day period will *normally* (emphasis supplied) be deemed a waiver. The Court has not commented on those situations in which the waiver doctrine time limit would be extended.

In summary it appears that the attorney-client relationship required for the purpose of *Goode, supra,* is something less than the normal attorney-client relationship required during trial and pretrial proceedings. In any case, it is difficult to see why a substitute counsel could not as easily perform the *Goode* function as the counsel who tried the case.

---

9. *United States v. Goode,* 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975). In *Goode,* the United States Court of Military Appeals directed that, on or after May 15, 1975, a copy of the post-trial review "be served on counsel for the accused with the opportunity to correct or challenge any matter he deems erroneous, inadequate or misleading, or on which he otherwise wishes to comment." The failure of counsel for the accused to take advantage of this opportunity within five days of service upon him will normally be deemed a waiver of any error in the review. In a footnote, the Court stated that "[c]ompliance with this requirement will not be sufficient cause to extend the 90-day period in cases subject to the rule established in *Dunlap v. Convening Authority,* 23 U.S.C. M.A. 135, 48 C.M.R. 751 (1974)."

10. *United States v. Iverson,* No. 433471, 2 M.J. 489 (A.C.M.R. 31 Dec. 1975).

A further comment is warranted concerning assignment of permanent change of station of legal officers. The current central Army assignment policy requires decisions for reassignment on permanent change of station to be made at Department of the Army level. The replacement of a single legal officer at an overseas duty station is often not a simple matter. In many instances multiple reassignments are required in order to provide a one-for-one replacement.

The rule enunciated by the majority opinion will require a staff judge advocate to begin phasing out a defense counsel at least six months prior to his scheduled date of departure. This will in turn, result in limited use of the departing officer in the military justice area during the phase down period. Lack of use of a critical asset can only be termed poor personnel management and results in an unnecessary strain on the military justice system.

In summary, the majority opinion's rule requiring the trial defense counsel who tried the case to participate in the post-trial activities is not warranted by judicial precedent, and, in my opinion, not by public policy, justice, or fair play.

As the majority opinion noted, the record is devoid of any reference as to whether the appellant accepted a new defense counsel on Captain Pangburn's departure on permanent change of station. I would presume the regularity of the appointment of the new defense counsel as there are no facts contained in the record nor in the assignments of error which would indicate otherwise. I, therefore, conclude the requirement of *Goode, supra,* has been complied with and would affirm the findings and sentence.

**UNITED STATES**

v.

**Private First Class Walter B. BAKER, 318–54–6084, US Army, 401st Military Police Company, 720th Military Police Battalion, Fort Hood, Texas 76544.**

**CM 433770.**

U. S. Army Court of Military Review.

Sentence Adjudged 8 Aug. 1975.

Decided 2 March 1976.

