**UNITED STATES, Appellee,**

v.

**Steven A. GNIBUS, Hull Maintenance Technician Fireman, U.S. Navy, Appellant.**

No. 47,151.
NMCM 82–4298.

U.S. Court of Military Appeals.

Oct. 14, 1985.

For Appellant: *Lieutenant Daniel Lippman*, JAGC, USNR (argued); *Lieutenant Commander William A. DeCicco* (on brief); *Lieutenant Commander Georgia L. Winstead*, JAGC, USNR.

For Appellee: *Major E. D. Clark*, USMC (argued); *Captain W. J. Hughes*, JAGC, USN, and *Lieutenant Ronald S. Wasilenko*, JAGC, USNR.

*Opinion of the Court*

EVERETT, Chief Judge:

Contrary to appellant's pleas, a general court-martial convened at Naval Submarine Base New London, Groton, Connecticut, found him guilty of unauthorized absences: (a) from Naval Submarine Support Facility, New London, from January 3, 1979, until February 17, 1981; (b) from Naval Education and Training Center Newport, Rhode Island, from March 16 until March 19, 1981; and (c) from Naval Submarine Support Facility, New London, from June 25, 1981, until March 1, 1982, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. The sentence adjudged was a bad-conduct discharge, confinement at hard labor and partial forfei-

tures for 12 months, and reduction to pay grade E-1. The findings and sentence were approved by the convening authority and affirmed by the Court of Military Review. 16 M.J. 844 (1983). We are concerned in this appeal with whether Gnibus was improperly denied at trial the services of a military counsel whom he had requested.[1]

**I**

In March and April 1981, the Director for Administration, Naval Education and Training Center, Newport, Rhode Island, referred to a special court-martial charges alleging the first two unauthorized absences of which appellant subsequently was convicted by general court-martial. In preparation for trial, Article 39(a), UCMJ, 10 U.S.C. § 839(a), sessions of the special court-martial took place on May 4, June 5, and June 10, 1981; and appellant was represented there by Kenneth A. Leary, a civilian attorney from Connecticut, and by a detailed defense counsel, Lieutenant Ronald J. Borro.[2] At the June 5 session, defense counsel asserted that, with respect to the lengthy absence that had commenced in January 1979, Gnibus would claim the defense of duress, based on his being required to make repairs on nuclear submarines under conditions which exposed him to life-endangering excess radioactivity.

Because it appeared that civilian defense counsel would need a security clearance in order to obtain information material to this defense, a discussion ensued about the delay that might occur before the clearance was obtained. Borro was detaching from his duties at Newport on June 10, so there also was a discussion of the effects of his reassignment on his continued participation in the case.

---

1. The precise issue was

   WHETHER DISPOSITION OF APPELLANT'S REQUEST FOR APPOINTMENT AS INDIVIDUAL MILITARY COUNSEL OF AN ATTORNEY WHO HAD HAD A PREVIOUSLY ESTABLISHED ATTORNEY–CLIENT RELATIONSHIP WITH APPELLANT THAT HAD BEEN SEVERED FOR ALLEGED GOOD CAUSE WAS PROPERLY DETERMINED PURSUANT TO THE PROVISIONS OF THE 1981 AMENDMENTS TO ARTICLE 38, UNIFORM CODE OF MILITARY JUSTICE.

   We also granted review on another issue which has now been resolved by the filing of a document that was not originally before us. 17 M.J. 61 (1983).

2. Apparently, Borro was promoted to Lieutenant Commander sometime in June, 1981.

Near the end of the Article 39(a) session on June 10, defense counsel suggested that the trial itself should be held in New London for the convenience of possible witnesses. On June 19, the special court-martial convening authority at Newport wrote to the commanding officer, Naval Submarine Support Facility, New London, to advise him that, because the defense wished the case to be tried in New London, as well as for several other reasons,[3] he was withdrawing the charges from the special court-martial. In this same letter he noted that

the Commanding Officer, Naval Legal Service Office, Newport, Rhode Island has indicated his willingness to detail an assistant defense counsel from the Naval Legal Service Office Detachment, New London, to coordinate matters with civilian counsel at the new situs of trial, *and to assist in maintaining liaison with the principal detailed counsel, LCDR Borro, who has already detached from that command to proceed to his new duty station in Sigonella, Sicily.*

(Emphasis added.)

Less than a week later, appellant departed on another lengthy unauthorized absence, which did not terminate until March 1, 1982. Thereafter, an Article 32, UCMJ, 10 U.S.C. § 832, investigation was initiated not only as to the most recent absence, which began on June 25, 1981, but also as to the two earlier absences, which originally had been before the special court-martial. During this pretrial investigation, Gnibus was represented by detailed military counsel, Lieutenant Shirley Vander Kamp. Upon recommendation of the investigating officer and pursuant to advice from the staff judge advocate, on April 26, 1982, the Commander Submarine Group

TWO at New London referred all the charges to a general court-martial which had been appointed by a convening order of that same date; and these charges were served on Gnibus two days later.

An Article 39(a) session of the general court-martial was convened on May 5, 1982, by the military judge, Commander Newell D. Krogmann, who also had been the judge in the aborted special court-martial. At this time, appellant took the position that Lieutenant Commander Borro—having been detailed as defense counsel to represent him before the special court-martial as to some of the same charges that later were referred to the general court-martial—was still his detailed defense counsel. Trial counsel, on the other hand, insisted that, because the charges had been withdrawn from the special court-martial and the convening order for that court had been rescinded by the convening authority, Borro was no longer appellant's detailed defense counsel.

The defense also claimed that the convening authority had improperly denied a request submitted by Gnibus on April 29, 1982, that Borro be made available to represent him as individual military counsel. Although that request is not included in the record, it apparently had relied on the attorney-client relationship that had been established a year earlier between appellant and Borro.

In denying this request, the convening authority conceded that, according to the Manual of the Judge Advocate General of the Navy (JAGMAN), a request for individual military counsel as to whom an attorney-client relationship already existed should "be forwarded to the requested counsel's commanding officer for an admin-

---

**3.** 3. In light of the fact that the accused's duress defense will implicate interests peculiar to the submarine community, require witnesses within the Commander, Submarine Group TWO command, including the expert requested by the Military Judge, and involve disclosures of classified information pertinent to safety regulations and procedures on board nuclear submarines, it is considered that the interests to be balanced in deciding whether or not to prosecute this case to conclusion, or

perhaps, in the alternative, to accept an application for an administrative discharge under other than honorable conditions in lieu of trial by court-martial, is one most appropriately made by a convening authority within the Commander Submarine Force, U.S. Atlantic Fleet chain of command. In this connection it is noted that the main charge against the accused involves an absence from your facility.

istrative determination" about the lawyer's "availability." However, since the convening authority at New London concluded that there was no *existing* attorney-client relationship between" appellant and Borro, he had not forwarded the request but had made the determination himself as to the availability of counsel. Because Borro was currently assigned as principal legal adviser at the Naval Air Station, Sigonella, the convening authority had determined that he was not reasonably available.

After hearing argument, the military judge ruled "that the attorney client relationship between" Borro and appellant had "been severed for good cause mainly the subsequent unauthorized absence of the accused and that the accused is not entitled to have Lieutenant Commander BORRO detailed [as] defense counsel at these proceedings." Moreover, the judge ruled that the convening authority had no duty to forward appellant's request for counsel to Lieutenant Commander Borro's commander and that the request had been properly denied by the convening authority.[4]

Appellant was arraigned during the same Article 39(a) session. Before the session recessed, the judge advised Gnibus that, if he were absent voluntarily without authority from the trial, it could proceed in his absence.

At the next Article 39(a) session, which took place on June 7, 1982, appellant was absent from court; and on the basis of testimony from appellant's supervisor, the judge concluded that the absence was voluntary and without authority. However, then the judge, on his own motion, raised again "the matter of counsel for the accused." After extensive argument, the judge reversed his "prior ruling that the attorney-client relationship between" appellant and Borro had been "severed for a good cause with regard to the charge[s]" concerning the first two unauthorized absences. Accordingly, the case was "put in abeyance until Lieutenant Commander

BORRO is present at the trial situs and detailed as a defense counsel in this case."

On June 10, 1982, the convening authority requested the military judge to reconsider his ruling and urged that in processing initially a request for individual military counsel which includes a claim of an existing attorney-client relationship, a convening authority may go behind the bare claim and assess its validity, instead of automatically forwarding it for action by the requested counsel's superior. Moreover, he suggested that it would be improper for the military judge to abate further proceedings because of the counsel issue. *See United States v. Redding*, 11 M.J. 100 (C.M.A.1981).

On June 17, 1982, still another Article 39(a) session took place, at which time Gnibus was determined still to be "voluntarily" absent without authority. In ruling upon the Government's request for reconsideration, the judge initially commented "that there is a significant difference between the analysis of a detailed counsel situation and the analysis of an individual military counsel situation." In his view, "implicit within any ruling on a detailed counsel issue is the matter of severance and whether or not it was for a good cause." Judge Krogmann ruled that appellant's "lengthy unauthorized absence," which began on June 25, 1981, had "attenuated his relationship with ... BORRO and due to its length rendered it severed." He observed:

> Further, the accused is absent at the time of this trial and is absent both voluntarily and without authority. He therefore has no personal ongoing professional relationship with Lieutenant Commander BORRO and could not have one if Lieutenant Commander BORRO were here. Thus, since the accused by his actions has severed his attorney-client relationship with Lieutenant Commander BORRO, he has no right to have

---

4. The military judge also ruled that appellant's right to counsel was governed by the amendments to the Uniform Code and the Manual for

Courts-Martial which took effect on January 20, 1982.

Lieutenant Commander BORRO present as a detailed defense counsel.

Turning to the request for counsel, the judge concluded that "[t]he attorney-client relationship has been severed and any claim to an existing attorney-client relationship is therefore invalid." Accordingly, Borro was "not among those from whom counsel" might "be selected under the terms of the Manual of the Judge Advocate General of the Navy."

## II

### A

During the early years of our Republic, no right to counsel was recognized in a trial by court-martial. *See* Wiener, *Courts-Martial and the Bill of Rights: The Original Practice*, 72 Harv.L.Rev. 1, 266 (1958); *cf.* G. Davis, *A Treatise on the Military Law of the United States* 36–37 (3d ed. 1913) (Under the 90th Article of War, the prosecuting officer owed certain duties to the accused to ensure a full and fair hearing; however, "[i]t is certainly not to be understood that in discharging this office, which is prescribed solely by justice and humanity, the judge-advocate should in the strictest sense consider himself as bound to the duty of a counsel, ... "). *But see* Henderson, *Courts-Martial and the Constitution: The Original Understanding*, 71 Harv.L.Rev. 293 (1957). By 1890, the situation had changed somewhat; and, as Colonel Winthrop explained in his treatise:

> [I]n general it is to be said that the admission of counsel for the accused in military cases, is not a right but a privilege only, but yet a privilege almost invariably acceded and as a matter of course; and this whether the counsel proposed to be introduced be a military or civil, professional or unprofessional person.

W. Winthrop, *Military Law and Precedents* 165 (2d ed. 1920 Reprint) (footnotes omitted).

In 1916, a statutory right to counsel was first granted by this language of Article of War 17:

> The accused shall have the right to be represented before the court by counsel of his own selection for his defense, if such counsel be reasonably available, but should he, for any reason, be unrepresented by counsel, the judge advocate shall from time to time throughout the proceedings advise the accused of his legal rights.

Subsequently, the Articles of War were revised to provide that for each general or special court-martial, the appointing authority should appoint "a defense counsel," A.W. 11, and that, in a general or special court-martial, "[t]he accused" would "have the right to be represented ... by counsel of his own selection, civil counsel if he so provides, or military if such counsel be reasonably available, otherwise by the defense counsel duly appointed ... pursuant to Article 11."[5] A.W. 17.

As originally enacted, the Uniform Code of Military Justice required appointment of trial and defense counsel for general and special courts-martial. Each of them would be a lawyer, if the trial were by general court-martial; and in special courts, if the trial counsel were legally trained, the defense counsel also would have legal qualifications. *See* Article 27, UCMJ, 10 U.S.C. § 827.[6] Moreover, Article 38(b), UCMJ, 10 U.S.C. § 838(b) provided:

> The accused shall have the right to be represented in his defense before a general or special court-martial by civilian counsel if provided by him, or by military counsel of his own selection if reasonably available, or by the defense counsel duly appointed pursuant to article 27. Should the accused have counsel of his own se-

---

5. "The right to defense counsel was not recognized by statutory Naval law until 1950, although it had been granted much earlier by administrative regulation." *See* D. Walker, *Military Law* 108 (1954).

6. Amendments to the Code in 1968 had the practical effect of requiring that lawyers be appointed to participate as trial and defense counsel in both special and general courts-martial. Military Justice Act, Pub.L. No. 90–632, 82 Stat. 1335 (1968).

lection, the duly appointed defense counsel, and assistant defense counsel, if any, shall, if the accused so desires, act as his associate counsel; otherwise they shall be excused by the president of the court.

To effectuate the policy of the Code, this Court required that an accused be accurately advised by the military judge as to his rights of counsel. *United States v. Donohew*, 18 U.S.C.M.A. 149, 39 C.M.R. 149 (1969). Moreover, the Court frowned on any action by commanders which interfered with or severed any attorney-client relationship which might have been established. *United States v. Clark*, 11 M.J. 70 (C.M.A.1981); *United States v. Easton*, 21 U.S.C.M.A. 335, 339, 45 C.M.R. 109, 113 (1972); *United States v. Murray*, 20 U.S.C.M.A. 61, 62, 42 C.M.R. 253, 254 (1970); *United States v. Tellier*, 13 U.S.C.M.A. 323, 32 C.M.R. 323 (1962); *United States v. Brady*, 8 U.S.C.M.A. 456, 460, 24 C.M.R. 266, 270 (1957); *United States v. Miller*, 7 U.S.C.M.A. 23, 28, 21 C.M.R. 149, 154 (1956).

The result of the Codal provisions and the judicial precedent was that a military accused had rights to counsel probably unparalleled elsewhere. No showing of indigency was required in order for him to obtain legally trained counsel. Unlike most civilian defendants,[7] he could request a specific lawyer as his defense counsel. Moreover, by requesting individual military counsel and not releasing the appointed defense counsel, a servicemember could obtain the services of two lawyers to represent him and not merely one.

**B**

In some respects the broad right to counsel granted to military accused was onerous for the armed services. *See* Hearing on H.R. 4689 Before the Subcomm. on Military Personnel and Compensation of the House Comm. on Armed Services, 97th Cong., 1st Sess. (1981). Providing two lawyers for defense of routine cases was an unnecessary drain on legal manpower. Moreover, an accused would sometimes request a lawyer from a distant location, primarily as a means of creating delay and expense which might lead to dismissal of charges or a favorable plea bargain. To achieve a better balance, Congress in 1981 amended Article 38 to provide that "[t]he accused is not entitled to be represented by more than one military counsel"; and that if an accused was represented by military counsel of his own selection, then detailed military counsel would be excused, subject to limited exceptions.[8]

Under the applicable version of Article 38(b)(7), the Secretary of each military department is authorized to define by regulation the circumstances under which a requested military counsel would be considered "reasonably available."[9] The controversy about appellant's right to the services of Lieutenant Commander Borro centers on interpretation of the regulations applicable to the Navy, as contained in the Manual of the Judge Advocate General of the Navy (JAGMAN).

Section 0110A of JAGMAN, as it applied at the time, provided that a requested mili-

---

**7.** *Drumgo v. Superior Court*, 8 Cal.3d 930, 106 Cal.Rptr. 631, 506 P.2d 1007 (1973); *but cf. Harris v. Superior Court*, 19 Cal.3d 786, 140 Cal.Rptr. 318, 567 P.2d 750 (1977).

**8.** The person authorized under secretarial regulations to detail counsel for general or special courts-martial might on his own initiative "detail additional military counsel as assistant defense counsel," or "approve a request from the accused that [detailed] military counsel ... act as associate defense counsel." Military Justice Amendments, Pub.L. No. 97–81, § 4(b)(6), 95 Stat. 1085, 1088 (1981).

**9.** The Secretary concerned shall, by regulation, define "reasonably available" for the purpose of paragraph (3)(B) and establish procedures for determining whether the military counsel selected by an accused under that paragraph is reasonably available. To the maximum extent practicable, such regulations shall establish uniform policies among the armed forces while recognizing the differences in the circumstances and needs of the various armed forces. The Secretary concerned shall submit copies of regulations prescribed under this paragraph to the Committees on Armed Services of the Senate and House of Representatives.

tary counsel, who was "on the active-duty list of the Navy or Marine Corps," *id.* at b(2)(a), would not be deemed "reasonably available" if he were one of the following:

(i) a flag or general officer; or

(ii) performing duties as trial or appellate military judge; performing court-martial duties exclusively as a trial counsel; performing duties as appellate defense or government counsel; performing duties as fleet, force, or staff judge advocate, *or principal legal advisor to a command, organization or agency,* or the principal assistant to such judge advocate or legal advisor; performing duties as a military magistrate; assigned as commanding officer, executive officer, or officer in charge; performing duties as an instructor or student at a college, university, service school or academy; or

(iii) assigned to any of the following commands, activities, organizations, or agencies: Office of the Counsel to the President; Office of the Secretary of Defense; Office of the Secretary of the Navy; Office of the Joint Chiefs of Staff; Office of the Chief of Naval Operations; Headquarters, Marine Corps; National Security Agency; Defense Intelligence Agency; Office of the Judge Advocate General; Office of Legislative Affairs; Office of the Naval Inspector General; Naval Military Personnel Command; or any other agency or department outside of the Department of Defense.

*Id.* at b(2)(c) (emphasis added). Under the JAG Manual, reasonable availability also depends on whether the requested military counsel is assigned to the Circuit or located within 100 miles of the place where the trial is to be held. *See id.* at b(2)(d).

Notwithstanding the limitations otherwise applicable because of a requested counsel's current assignment, if ... an attorney-client relationship regarding a charge in question existed prior to the request, the requested military counsel should ordinarily be made available to act as individual military counsel. As used herein, an attorney-client relationship exists when counsel and accused have had a conversation which is privileged and counsel had engaged actively in the preparation and pretrial strategy of the case.

*Id.* at b(3).

Under the procedure for requesting counsel as outlined in the JAG Manual, the accused must make the request "in writing, indicating the duties and location of the requested counsel, if known." The request

shall clearly state whether there is an existing attorney-client relationship between the accused and the requested military counsel regarding a charge in question. It shall indicate whether the requested military counsel possess unique or special qualifications relevant to the case and specify those qualifications. Such request will be made by the accused or the detailed defense counsel promptly and be submitted through the trial counsel, if any, to the convening authority.

*Id.* at c(1).

According to the JAG Manual,

[i]f the requested military counsel is ... unavailable ... and there is no claim of an existing attorney-client relationship regarding a charge in question, the convening authority shall promptly deny the request and so inform the accused, in writing, citing the dispositive subsection(s). In all other cases, the convening authority shall promptly forward the request to the commander of the requested counsel. The convening authority shall provide that authority with the following information: the nature and complexity of the charges and legal issues involved in the case; the estimated duration of the necessary absence (travel, preparation, and participation in the proceeding); the experience level and any special or unique qualifications of detailed defense counsel; and any other information or comments deemed appropriate.

*Id.* at c(2)(a).

### C

On June 19, 1981, when the convening authority of the special court-martial at Newport withdrew the charges from that

court, he obviously contemplated that Borro would continue to represent Gnibus in any subsequent trial on these charges. His letter advising of the withdrawal refers to "maintaining liaison with the principal detailed counsel, LCDR Borro, who has already detached from that command to proceed to his new duty station in Sigonella, Sicily." Both at trial and on appeal appellant has complained because of the subsequent failure to detail Borro to represent him at the general court-martial in New London.

In *Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), the Supreme Court dealt with a somewhat similar complaint. There a deputy public defender who had been assigned to defend the accused against five felony charges had represented him at the preliminary hearing and had supervised an extensive investigation. Shortly before trial, this lawyer had been hospitalized for emergency surgery and another trial attorney in the public defender's office had been assigned to represent defendant. At the opening of the trial, the defendant made a motion for continuance, but this was denied. The ensuing conviction was affirmed in the state courts and later was collaterally attacked in the federal courts.

█ Reviewing denial of *habeas corpus*, the Court of Appeals for the Ninth Circuit reversed the conviction and held that the sixth amendment "include[s] the right to a meaningful attorney-client relationship" and this had been violated by the trial court's failure to inquire about the probable length of the deputy public defender's absence and by its failure to weigh the defendant's interest in continued representation by this attorney against the state's interest in proceeding with the scheduled trial. 649 F.2d 718, 720 (1981) (footnote omitted). On writ of certiorari, the Supreme Court reversed and, in an opinion by the Chief Justice, ruled that denial of the continuance had not violated the defendant's right to counsel and that there was "no ... [constitutional] right to a 'meaningful attorney-client relationship.'" 461 U.S. at 14 n. 6, 103 S.Ct. at 1617 n. 6. In light of this precedent, we cannot hold that the failure to detail Borro to represent appellant at the general court-martial violated any constitutional right.

However, as has already been noted, Congress has provided servicemembers with a right to counsel in courts-martial which goes beyond the minimal constitutional right. Certainly this Court cannot question—or refuse to enforce—the congressional mandate that servicemembers are entitled to more than the minimum that the Constitution requires. Thus, we conclude that cases like *United States v. Iverson*, 5 M.J. 440 (C.M.A.1978), where we held that an existing attorney-client relationship may not be severed without good cause, are not affected by the Supreme Court's decision in *Morris v. Slappy, supra.*[10]

█ Although we adhere to the policy of *Iverson*, we do not believe it requires that, when court-martial charges are withdrawn, the defense counsel detailed for that court-martial must invariably be detailed to defend the accused at a later trial, even though the same charges are involved. Obviously, we would not tolerate withdrawal and rereferral of charges as a stratagem to replace defense counsel. However, where, as here, there is a considerable lapse of time between trials, the convening authorities are different, and the place of trial is different, we conclude that the convening authority at the second court-martial was free to appoint the counsel he chose.[11] When a different counsel has been

---

**10.** Justice Brennan's opinion concurring in the result in *Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), cites several cases involving interference with a defendant's relationship with his retained attorney by denial of a request for a continuance, *see, e.g., Releford v. United States*, 288 F.2d 298 (9th Cir.1961); *Gan-*

dy v. *Alabama*, 569 F.2d 1318 (5th Cir.1978). *See also Smith v. Superior Court*, 68 Cal.2d 547, 68 Cal.Rptr. 1, 440 P.2d 65 (1968) (indigent defendant).

**11.** Because of the independent defense counsel systems that have been developed in some of the services, the selection of counsel is really made

detailed, the remedy for an accused who wishes to be represented by the same lawyer who was his counsel at the earlier proceeding is to request, pursuant to Article 38, that this lawyer be assigned as his individual military counsel.

When, as here, a request is made for appointment of a lawyer as individual military counsel, the existence of an attorney-client relationship is an important factor in determining whether the request should be granted.[12] The JAG Manual (b(3)) recognizes this, for it provides that, when "an attorney-client relationship" already exists, "the requested ... counsel should ... be made available" even under circumstances when usually he would not be considered "reasonably available." According to the Manual, only if "there is no claim of an existing attorney-client relationship" may the convening authority himself deny the request for counsel. "In all other cases, the convening authority shall promptly forward the request to the commander of the requested counsel." (c(2)(a)).

As we interpret this language, the convening authority is not empowered to consider the merits of the claim that an attorney-client relationship exists or to decide whether it has been severed. Instead, responsibility for that decision is placed on the requested counsel's commander. Perhaps the responsibility has been allocated in this manner on the assumption that the requested counsel's commander is in the best position to consult with that lawyer and thereafter to determine the merits of the accused's claim that an attorney-client relationship still exists.

In this case, the prescribed procedure was not followed: the convening authority made the decision that the attorney-client relationship did not exist and never forwarded the request for counsel to Borro's commanding officer. Thus, Gnibus was de-

nied a determination as to the existence of the attorney-client relationship by the official who, pursuant to the provisions of the JAG Manual, should have made that determination.

Subsequently, the military judge made a judicial ruling as to the existence of an attorney-client relationship; and he decided that the attorney-client relationship between Gnibus and Borro had been terminated before the request for counsel was made. Certainly, if no rational person would have reached a different conclusion, appellant has little basis to complain because the convening authority—rather than Borro's commander—determined that no attorney-client relationship existed. In that event, Borro's commanding officer would have reached the same conclusion and, in light thereof, would have declared that Borro was not "reasonably available" because of his assignment as principal legal advisor at Sigonella.

■■■ This Court has never held that an unauthorized absence automatically terminates an attorney-client relationship. Indeed, if an accused absents himself after arraignment, trial may proceed and the defense counsel continues to perform his duties. He still is the accused's lawyer, and an attorney-client relationship still exists. However, under the circumstances of the present case, we conclude that on the undisputed facts and as a matter of law, the relationship between Gnibus and Borro had been terminated before the request was made for counsel.

On June 25, 1981, when he absented himself without authority, the charges against Gnibus already had been withdrawn from the special court-martial to which they had been referred, and alternatives to court-martial—such as discharge in lieu of court-martial—were being considered by Naval

by someone other than the convening authority, and his appointment of counsel is little more than a ministerial act.

12. In oral argument before this Court, appellate government counsel also maintained that it was not shown that the request had been in the form required by the JAG Manual and that it may not

have specifically adverted to the existing attorney-client relationship. Because the request is not in the record and from the context, it would appear that the request had been submitted in proper form, we are not going to resolve the case against appellant on that ground.

authorities. The defense counsel, Borro, had been routinely transferred to a post thousands of miles from the place of trial; and at that post he had been assigned to perform duties quite different from those of defending at courts-martial.

Legal relationships can change significantly as a result of a lengthy unauthorized absence. *Cf. United States v. Koopman*, 20 M.J. 106 (C.M.A.1985). When appellant's lengthy absence which began in June 1981 is added to the other circumstances, we conclude that the attorney-client relationship had ended and that, unless reassigned to defend appellant, Borro had no continuing responsibility towards his erstwhile client. Of course, the responsibility for this termination rests solely with Gnibus, because it seems clear that, if he had not absented himself, Borro would have been detailed to represent him at the trial in New London—if, in fact, such a trial had ever taken place under these circumstances.

■ The same result can be predicated on estoppel. Under this rationale, appellant, who interfered with the attorney-client relationship by his lengthy absence, is estopped from asserting any claim based on that relationship. This theory recognizes the interest of the Government in assigning its personnel efficiently and leads to the conclusion that, because appellant departed from Newport in June 1981 and thereby made it impossible for Borro to engage in the usual attorney-client contacts, Gnibus is not entitled to complain that some other lawyer was later assigned to represent him.

We hold, therefore, that the procedure contemplated by the JAG Manual was not followed in this case but that appellant was not prejudiced by that defect.

### III

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judges FLETCHER and COX concur.

Note: Judge Albert B. Fletcher, Jr., voted on this case prior to his removal from the Court by the President of the United States on September 11, 1985, for reasons of physical disability.