**UNITED STATES**

v.

**Vincent B. KELLY, Chief Warrant Officer (W–2), U. S. Coast Guard CGCM 9952.**

No. 814.

U. S. Coast Guard Court of Military Review.

10 May 1979.

Trial Counsel: LT Richard L. Maguire, USCG.

Defense Counsel: CDR Floyd W. White, Jr., USCG.

Appellate Defense Counsel: LT Michael L. Kudalis, USCGR, LT Jon W. Peterson, USCGR.

Appellate Government Counsel: LCDR Thomas W. Snook, USCG, LCDR Larry F. Wheatley, USCG.

OPINION

BURGESS, Judge:

A general court-martial with members found the appellant guilty of sale of Government property, wrongful appropriation of Government property, unlawful obtaining of personal services and wrongful solicitation of a false official statement, in violation of Articles 108, 121, and 134, 10 U.S.C. §§ 908, 921 and 934. He was sentenced to a reprimand and to forfeit $200.00 pay per month for three months. During the initial review, the sentence was approved with a modification of two specifications. Pursuant to Article 69, 10 U.S.C. § 869, the record was referred to the United States Coast Guard Court of Military Review. After deferral of sentence was denied by this court, the Secretary of Transportation, upon petition by the appellant, deferred the collection of $500.00 of forfeitures pursuant to Article 74, UCMJ, 10 U.S.C. § 874, until the Commandant acts on the appellant's petition for clemency subsequent to action by this Court.

Among other errors, the appellant alleges he was denied a speedy trial. The facts pertinent to the case are as follows. Because of alleged irregularities the appellant was relieved of his duties as HAIL Officer in Boston. His permanent promotion to CWO–2 was withheld and an adverse fitness report given. A total of 104 specifications, preferred against him in September and early October 1976, were referred to an Article 32, 10 U.S.C. § 832 investigation in late October 1976 at which appellant requested and was granted counsel of his choice, CDR White. The investigating officer's report was received in late November, the pretrial advice submitted in late December and, on 5 January 1977, after amendments were made, a total of 5 charges and 45 specifications were preferred against the appellant. On 1 February the charges were referred to a general court-martial by Commander, First Coast Guard District. Trial began on 2 March and ended on 10 March. Appellant was represented by defense counsel of his choice as detailed defense counsel. The record was submitted to the Commander Seventh Coast Guard District who was the initial reviewing authority on 29 August 1977, after having been sent to appellant's counsel for examination. A copy of the record was not given the accused. On 21 October, the staff legal officer's advice was provided to the reviewing authority with a copy to the defense counsel. In his reply, appellant's counsel pointed out he had not received a copy of the record and challenged certain statements made in the review. After receiving a copy of the record, defense counsel submitted some further comments. The district legal officer brought these additional matters to the reviewing authority's attention and modified certain advice he had previously given. The record was referred to this Court under Article 69, UCMJ, 10 U.S.C. § 869 on 17 January 1978. On 22 September, after briefing and argument appellant's counsel filed a supplemental assignment of errors. As mentioned previously virtually all the forfeiture sentence was deferred by the Secretary of Transportation.

■ Appellant asserts he was denied a speedy trial arguing that the combination of pretrial administrative actions and being

accused of far more than he was found guilty of were effects identical to those of one accused or arrested and, therefore, the prosecution should be deemed to have commenced on 28 January 1976. We are not convinced that these actions taken constituted the commencement of criminal prosecution since he was neither served with charges, arrested or otherwise restrained. Rather, *U. S. v. Amundson,* 23 U.S.C.M.A. 308, 49 C.M.R. 598 (1975) is controlling. If an involuntary extension of enlistment does not amount to arrest or restraint, then, in our view, relief from an assignment, a lesser sanction, cannot be so categorized. Nevertheless, there remains the issue of whether the 173 days between presentment of charges and trial amounts to a violation of the sixth amendment of the Constitution. In the absence of a codal violation, the Court of Military Appeals has taken a "functional analysis of the facts in each case to determine whether the Government proceeded with reasonable diligence and without deliberate oppression of the accused." *U. S. v. Amundson, supra.*

█ The evidence in the case shows that this pretrial investigation along with two others was being prepared during the same period of time. The complexity of the investigation is demonstrated by the fact that the total 104 specifications alleging a variety of offenses were initially prepared. Following the recommendations of the Article 32 investigating officer and the legal officer's advice and direction, only 5 charges and 45 specifications were eventually referred to trial. Given the complexity of the charges and the need to dispose of all charges at one court-martial (Para. 32c, MCM, 1969 (Rev.)), we agree with the conclusion of the military judge that the Government proceeded with due diligence and reasonable speed and without deliberate oppression of the defendant.

█ The appellant further argues that he was denied a speedy post-trial review because the action of the reviewing authority took more than 180 days to complete. Part 506–5(a), MJM (CG–488) contains a requirement for accounting for delays in review

under Article 65, UCMJ, 10 U.S.C. § 865, if an accused is in continuous post-trial confinement exceeding 90 days. Subparagraph (b) covers those cases where there is no continuous post-trial confinement exceeding 90 days and requires that the convening or reviewing official "shall similarly account for the delay in their action or review . . . when the action or review is not taken within 180 days from the date the sentence was adjudged." The appellant argues that the presumption set forth in *Dunlap v. Convening Authority,* 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974) and *U. S. v. Brewer,* 24 U.S.C.M.A. 47, 51 C.M.R. 141, 2 M.J. 738 (1975), applies to this case. The Dunlap-Brewer presumption has only been applied by the Court of Military Appeals to cases of continuous post-trial confinement. Because there was not such continuous confinement in this case, the rule does not apply. We interpret the provisions of Part 506–5(b) as requiring an accounting for the delay. Such an account is contained in the legal officer's review and advice provided to the Commander, Seventh Coast Guard District. The total delay of 233 days is substantial. The accounting describes the impact which other high priority demands had upon correcting and completing the record. A total of 140 days was involved in this authentication process. Because of the different locations of counsel and judge, an additional 31 days were involved in routing the record through defense counsel and then from the First Coast Guard District to the Seventh Coast Guard District. An additional 62 days was involved in completing the post-trial advice. The 44 days between submission of advice and action by the convening authority was extended by compliance with the requirements of *U. S. v. Goode,* 23 U.S. C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975). While the time frame between trial and action by the initial reviewing authority is substantial, in our view, the government's action was not unreasonable nor deliberately oppressive. It is also noted that virtually all the sentence was deferred.

█ Appellant urges that Article 54, UCMJ, 10 U.S.C. § 854 was violated by not

giving a copy of the record to the accused upon authentication. The Court of Military Appeals in *U. S. v. Cruz-Rijos,* 1 M.J. 429 (C.M.A.1976) stated that such service upon defense counsel would be sufficient. Appellant's individual military counsel had a record in his possession the very day he prepared his Article 38(c), 10 U.S.C. § 838(c) brief. Although as mentioned above, the defense counsel did not have a copy of the record before him when he submitted his first rebuttal of the staff legal officer's review, he was provided a copy of that record and based upon his further review submitted additional comments to be forwarded to the initial reviewing authority. Thus, while the specific provisions of Article 54(c) were not met, there was no substantial prejudice to the appellant.

█ Appellant also asserts that the post-trial review is inadequate since it failed to discuss the evidence in relation to elements of each of the seven specifications of which there was a finding of guilty. In *U. S. v. Barnes,* 3 M.J. 406 (C.M.A.1977), cited by the appellant in support of his position, only one of three judges would impose such a requirement. The series of post-trial submissions by appellant's counsel including his *Goode* responses, provided the appellant with the full opportunity to point out the alleged deficiencies. Several perceived deficiencies were in fact pointed out to the reviewing authority by the staff legal officer. The specific inadequacies in the review now asserted before this court were in fact covered by the *Goode*-induced exchanges. Thus, in our view, the goals and purposes of *Goode* were achieved in this case and there is no basis for appellant's objection.

█ Appellant argues that the legal review was deficient because it failed to point out that the value of the lawnmower wrongfully sold was found by the court to be $100 vice $250 and, furthermore, that the General Court-Martial Order was similarly flawed. The latter point is well taken and the General Court-Martial Order must be corrected to reflect this finding of reduced value. With respect to the review, the re-

viewer did mention a sale price of $100. Additionally, the Article 38(c) brief submitted by appellant specifically mentioned the guilty finding of selling military property of a value of $100. We conclude that the reviewing authority was not misled by the failure of the legal review to have specifically pointed out the reduced value finding.

█ Appellant argues that because of the previous attorney-client relationship formed between LT Kenney and appellant, the failure to officially assign LT Kenney to the case as the detailed or assistant counsel was an error justifying setting aside the findings and ordering a rehearing. Implicit in appellant's argument is the proposition that if an attorney-client relationship is formed between a lawyer and an accused, the accused is entitled to have that lawyer "detailed" as his counsel under Article 27(b), UMCJ, 10 U.S.C. § 827(b), and thus be represented by two counsel. We do not agree.

█ Under the provisions of Article 27, UCMJ, 10 U.S.C. § 827, counsel with certain qualifications must be detailed by the convening authority to defend an accused. There is no provision for the accused to select an individual counsel although, under the provisions of Part 302–3, Coast Guard Military Justice Manual (CG–488), an accused can request counsel who is from a district other than that which convened the court-martial. Under Article 38(b), UCMJ, the accused has a right to be represented by one of three individuals, i. e. civilian counsel, military counsel of his own selection (if reasonably available) or counsel detailed under Article 27. Article 38 goes on to say that if an individual military counsel is provided then a previously detailed counsel can act as associate counsel. This latter provision does not create a right for the accused to be represented by two attorneys. It merely states that, in those situations where a lawyer has already been detailed to represent an accused and, subsequently, an accused avails himself of his right to select counsel of his choosing and obtains such counsel, the previously detailed counsel can be retained by the accused. Both *United*

*States v. Tellier,* 13 U.S.C.M.A. 323, 32 C.M.R. 323 (1962) and *United States v. Jordan,* 22 U.S.C.M.A. 164, 46 C.M.R. 164 (1973) deal with such a situation. Unanswered by the Court of Military Appeals is the issue of whether the government can ascertain the accused's desires for a specific individual defense counsel and then assign that individual as defense counsel.

As Judge Lynch pointed out in his concurring /dissenting opinion in *U. S. v. Whipple,* 4 M.J. 773, 781–784 (C.G.C.M.R. 1978), during the Congressional hearings of the proposed UCMJ there was considerable concern over the requirement that the Article 27 detailed counsel be a lawyer and that the wording of Article 38(b) permitted too much control over the availability of individual military counsel. Those hearings also expressed concern over the control exercised by the convening authority over the defense of the case because of his ability to assign the defense counsel.[1] A suggestion was also expressed that, regardless of the accused's wishes, appointed counsel be retained so to ensure presence of a trained officer as associate counsel.[2]

We conclude that the intent of Congress in enacting Article 38(b) and Article 27, UCMJ, was to meet the concerns expressed during the hearings; namely, to ensure that an accused would be represented by an individual trained in the law, that a lawyer trained in military law be available to him and that the accused be given a reasonable opportunity to choose the military individual who would serve as his defense counsel.

Because the concerns of Congress were met by the action of the government in determining whether the defendant desired a particular defense counsel before assigning him as detailed counsel, we see no objection to that procedure. Moreover, on the facts of this case, we see no prejudice to the accused.

Just after CWO Kelly was relieved but, before he was charged, LT Kenney provided him some advice. When the Article 32 Investigation was convened, the accused asked for and was assigned CDR White as his requested military counsel. While the charges were sworn to on 5 January 1977, the accused was advised of the charges against him on 25 January 1977. On 26 January 1977 the charges were received by the Commander, First Coast Guard District, the general court-martial authority.

Once the charges were referred to the general court-martial authority, CDR White, LT Kenney and the accused conferred by telephone after which the accused by letter of 26 January 1977 specifically requested that CDR White be assigned to act as "detailed military counsel". Although the initial 26 January message sent by the convening authority, Commander, First Coast Guard District requested that CDR White be made available as individual military counsel, the reply message from the Twelfth District in San Francisco, where CDR White was stationed, made him available as a "detailed" counsel. That message also contained a suggestion from CDR White for the assignment of LT Kenney as assistant defense counsel. The request for assistant defense counsel was made because of CDR White's distance from the trial site and LT Kenney's previous prior involvement with CWO Kelly. Because of the press of other courts-martial and other work in the First Coast Guard District Legal Office, CDR White was advised that LT Kenney was not available as assistant defense counsel. After receiving a request for reconsideration based on an argument that defense was misled into believing that LT Kenney had been "detailed" as defense counsel, a charge which was properly rejected because of the previous communications referred to above, the First District again declined to assign LT Kenney to the defense. CDR White was asked if he desired the First District to make a request for an assistant counsel from outside the district through normal channels. Not desiring to waive an issue before trial, CDR

---

1. Hearings before House Armed Services Committee on H.R. 2498, 81st Congress, 1st Sess., p. 633.

2. *Id.* at 713–714.

White did not request assignment of another defense counsel. Neither assistant defense counsel nor assistant trial counsel were detailed. In the convening order, CDR White was detailed in accordance with Article 27, UCMJ.

Except for the previously mentioned right to request out of district counsel, the accused has no control over the assignment of detailed counsel. Thus, the failure to "detail" LT Kenney as either defense counsel or assistant defense counsel under Article 27(b) was clearly not error. Furthermore, the original request for CDR White as detailed counsel belies this argument. As previously noted, assistant counsel was provided neither for the government nor the accused.

It is readily apparent that the government acted promptly in assigning defense counsel to the accused. Although there was considerable message traffic exchanged regarding the counsel issue, CDR White lost no time in preparing for the trial. Especially since CDR White had previously functioned as CWO Kelly's assigned counsel at the Article 32 investigation and thus was reasonably familiar with the charges which were the subject of the court-martial, we see no prejudice to the accused for failure to assign LT Kenney to the defense.

In a supplemental assignment of errors filed after this case was argued, the appellant points out that the convening authority did not include the reprimand in his original action but, rather, attempted to include it in a later action and order of 22 May 1978 after the original order had been published and the record forwarded to higher authority. Despite the fact that the convening authority approved the sentence which contained the reprimand, appellant argues that the failure to have included the reprimand in his action constitutes disapproval of the sentence, citing *United States v. Thompson,* 37 C.M.R. 915 (A.F.B.R.1967). He further urges that the 22 May action was a nullity. Our function is to affirm only those portions of the approved findings and sentence which we find correct in law and fact and which we determine, on the basis of the entire record, should be approved. Para. 100, MCM, 1969 (Rev.).

In *Thompson,* the Air Force Board of Review disapproved a reprimand because it concluded that the convening authority had not approved the reprimand. The Board came to this conclusion not only because the reprimand had not been included in the convening authority's action but also because "allied papers" indicated that no reprimand had been issued and was not intended to be issued. While the convening authority in our case did not include the reprimand in his action, his other actions as shown by the "allied papers" demonstrate that he did intend to issue a reprimand. Accordingly, we conclude that the convening authority did approve the reprimand. Furthermore, after reviewing the record, we conclude that the reprimand should be affirmed.

It appears that the action of the convening authority in issuing his 22 May 1978 supplemental order was without authority because the action was taken after the record had been forwarded to higher authority and after publishing the record. *United States v. Shultise,* 14 U.S.C.M.A. 31, 33 C.M.R. 243 (1963). Paragraph 95, MCM, 1969 (Rev.) provides a means whereby a higher authority can instruct the convening authority to withdraw his original action and substitute a correct action therefor.

In light of the foregoing, the findings and sentence as approved on review below are affirmed. The record is hereby returned to the Chief Counsel so that appropriate instructions can be given to the convening authority to correct and make complete his action and order.

Judges MaGUIRE and ALCANTARA concur.