**UNITED STATES, Appellee,**

v.

**Vincent B. KELLY, Chief Warrant Officer, U.S. Coast Guard, Appellant.**

No. 37,574.

CGCM 9952.

U.S. Court of Military Appeals.

Aug. 29, 1983.

For Appellant: *Lieutenant Robert R. Meeks,* USCGR (argued and reargued).

For Appellee: *Lieutenant Commander Larry F. Wheatley,* USCG (argued); *Lieutenant Commander Robert W. Ferguson,* USCG (reargued).

*Opinion of the Court*
EVERETT, Chief Judge:

Appellant's activities as Housing Officer for the First Coast Guard District led to his being charged in 104 specifications with violations of 7 articles of the Uniform Code of Military Justice. As a result of the Article 32[1] investigation and the pretrial advice from the district legal officer, only 5 charges with a total of 45 specifications were referred for trial by the Commander, First Coast Guard District.[2] A general court-martial with members found appellant guilty of selling without proper authority a $100[3] lawn mower owned by the United States; wrongfully appropriating a government pickup truck on two occasions; wrongfully obtaining the services of certain subordinates to perform personal tasks for appellant; and wrongfully soliciting an enlisted man to make a false official statement about rental of a truck, in violation of Articles 108, 121, and 134, UCMJ, 10 U.S.C. §§ 908, 921, and 934, respectively. Kelly was sentenced to be reprimanded and to forfeit $200 pay per month for 3 months.

In view of the sentence imposed, only a summarized record of trial was prepared, as permitted by Article 54(a) of the Code, 10 U.S.C. § 854(a). Since the convening authority had granted immunity to a witness, the case was reviewed by a substitute convening authority—the Commander, Seventh Coast Guard District—whose legal officer prepared a lengthy review of the case. Despite extensive comments submitted by trial defense counsel pursuant to *United States v. Goode,* 1 M.J. 3 (C.M.A.1975), the substitute convening authority approved the findings and sentence.

The case was referred to the Coast Guard Court of Military Review for review pursuant to Article 69, UCMJ, 10 U.S.C. § 869; and that court affirmed the findings and sentence. 7 M.J. 681 (1979). Thereupon, the General Counsel of the Department of Transportation certified the case to our Court for review of this issue:

App.Ex. XXXIV. This order should have set out the 45 specifications referred to trial and the action taken as to each one. *See* Appendix 15, pages A15–1 and A15–2, Manual for Courts-Martial, United States, 1969 (Revised edition). The GCMO must be corrected to satisfy this requirement.

---

1. UCMJ, 10 U.S.C. § 832.

2. These specifications are set out in the 13 unnumbered pages of the summarized record between pages 3 and 4. The court-members were initially given 26 specifications to consider. *See* App.Ex. XXXIV. Of these, only 18 were submitted for findings, since motions for findings of not guilty were granted as to 5 others and the remaining 3 were withdrawn by trial counsel. Of the 19 referred specifications which were never submitted to the court-members, 6 were withdrawn and 13 were dismissed during pretrial sessions. General Court-Martial Order 4–77 dated December 12, 1977, erroneously sets out only the offenses listed in

3. GCMO 4–77 fails to reflect that in their findings as to specification 1 of Charge I the members excepted "$250.00" and substituted "$100.00." (R. 76.) The court below directed that this omission be corrected. 7 M.J. 681, 684 (1979).

WAS THE COURT OF MILITARY RE-VIEW CORRECT IN DECIDING THAT THE GOVERNMENT COMPLIED WITH ARTICLES 27 AND 38(b) OF THE UCMJ BY ASCERTAINING THE DEFENDANT'S DESIRE FOR A PAR-TICULAR MILITARY DEFENSE COUNSEL AND THEN ASSIGNING THAT PARTICULAR COUNSEL TO FUNCTION AS BOTH DETAILED DE-FENSE COUNSEL AND INDIVIDUAL MILITARY COUNSEL?

I

Our review of this case has been hindered in two ways. First, since the record of trial is summarized, some of the relevant facts are obscure. Secondly, the certified issue does not mesh with the facts of the case. Indeed, if that issue were answered in the abstract, the only answer that could be given under Articles 27 and 38(b) of the Code, 10 U.S.C. §§ 827 and 838(b), respectively—as they existed at the time of trial—would be in the negative. Article 38(b) contemplated that an accused might have *both* an individual military counsel and a detailed counsel, in which event the detailed counsel would "act as ... associate counsel." *See, e.g., United States v. Jordan*, 22 U.S.C.M.A. 164, 46 C.M.R. 164 (1973). There was no provision under the Code or Manual for the same lawyer to serve simultaneously as "de-tailed" counsel and as individual military counsel.

The facts of this case, however, pose a different issue. On June 25, 1976, appellant was informed that he was under investiga-tion for suspected violations of the Uniform Code. Subsequently his office, apartment, personal gear locker, and other areas within his custody were searched. Then, on June 28, 1976, he was relieved of his duties pend-ing the outcome of the investigation.

According to a stipulation of fact later entered into at trial by the parties, on that same date Lieutenant Kenney, a Coast Guard lawyer in the First District Legal Office, was "made available as counsel for" appellant. The scope of Kenney's represen-tation is unclear from the record; but it at least included efforts during July 1976, to obtain return to appellant of a car and other items seized from him by the Coast Guard. Also, Kenney drafted a letter from appellant to the Commandant of the Coast Guard appealing the withholding of Kelly's pending promotion.

After formal charges were preferred against appellant on September 10, 1976, he requested that Commander F.W. White, a lawyer assigned to the Twelfth Coast Guard District Legal Office, represent him in the Article 32 investigation. White was made available for this purpose and served during the entire investigation. Meanwhile, on September 19, 1976, Lieutenant Kenney commenced 47 days of temporary duty at the Reserve Training Center, Yorktown, Virginia.

After the convening authority decided to proceed with the general court-martial, ap-pellant wrote him on January 26, 1977, con-cerning "Detailed Military Counsel; request for." The letter states:

It is hereby requested that CDR Floyd W. White, Jr., 230 44 7688, USCG, be made available to act as my Detailed Military Counsel and represent me in my forth-coming General Court-Martial.

The background for this request is pro-vided by a letter of February 7, 1977, from Lieutenant Kenney to the First District Le-gal Officer, wherein he states:

1. On 26 January 1977, I consulted with CWO2 Vincent B. KELLY and advised him that I was proffered as his detailed military counsel in his forthcoming Gen-eral Court-Martial in accordance with your oral advisement to me which was subsequently reflected on the 31 January 1977 legal docket. At that time, in com-pliance with Legal Office Memorandum 3–75, I advised CWO2 KELLY of his rights as to detailed counsel within or without the District and also of his rights as regards individual military counsel. In addition, I advised CWO2 KELLY of my perception of the state of the law relative to his rights to individual military coun-sel, detailed counsel, and individual civil-ian counsel.

2. My advice to CWO2 KELLY was that, based on my understanding of the law, he was entitled to detailed counsel plus individual military counsel or individual civilian counsel, but not all three. Thereafter, I permitted CWO2 KELLY to use my phone for purposes of contacting CDR WHITE, who had been his individual military counsel at the Article 32 Investigation, for purposes of obtaining his advice as to the advisability of accepting or rejecting myself for assignment as detailed counsel. Following his conversation with CDR WHITE, a conversation in which I also participated, CWO2 KELLY elected to request that CDR WHITE be "detailed" as his counsel and it was my understanding that thereafter I would be requested for assignment as "assistant defense counsel."

Thereafter—both before and at trial—Commander White insisted that, because of Lieutenant Kenney's earlier involvement with appellant before charges were preferred, an attorney-client relationship was established which required that Kenney be detailed by the convening authority to represent appellant in any subsequent court-martial. Under this theory, since Commander White had been "detailed" as defense counsel by the orders which convened the general court-martial, the convening authority was obligated to appoint Lieutenant Kenney as an assistant defense counsel. From appellant's premise that the attorney-client relationship with Kenney had been established and could not later be terminated by the convening authority without good cause, he reasoned that he was not required to request that Kenney be allowed to serve as his individual military counsel, pursuant to Article 38. Instead, he asserted that he was already entitled to Kenney's services and he objected to the failure of the convening authority to detail Kenney as an assistant defense counsel.

## II

■ We do not agree with this logic. For one thing, it is unclear from the record that the scope of Kenney's representation of appellant was such as to establish the type of relationship which our Court had in mind in stating that an attorney-client relationship cannot be terminated by a convening authority without good cause. *See United States v. Rachels,* 6 M.J. 232, 234 (C.M.A.1979). Assuming, however, that good cause was required, the request by appellant that a different lawyer—Commander White—be appointed to represent him in the Article 32 investigation removed any further obligation, whatever its nature, for the convening authority to detail Kenney as a defense counsel.

Of course, we would be confronted with an entirely different problem if, after Kenney had represented him in July 1976, appellant had requested unsuccessfully that he serve as his counsel for purposes of the Article 32 investigation. In that instance, the earlier representation might be a significant factor to consider in determining whether Kenney was "reasonably available." *See* Article 32(b).

■ Once Commander White had been chosen by appellant to represent him during the Article 32 investigation and had served in that capacity during the entire investigation, an attorney-client relationship had been established between Kelly and White that could not have been terminated without good cause. Under those circumstances, if the convening authority had detailed someone other than Commander White to serve as defense counsel for the trial, appellant could have requested his services under Article 38(b). If White had then been declared not "reasonably available" by his own commander, the Government would have had a difficult burden to bear in supporting that determination.

■ Faced with such prospects, the convening authority could have determined quite prudently that in the first instance he might as well "detail" Commander White as the defense counsel under Article 27(a). Certainly there is no bar under Article 27(a) to detailing as a defense counsel the military lawyer who has already represented an accused pursuant to Article 32(b). Indeed, it would seem logical to do this in most

instances, for then the detailed counsel already would be familiar with the case.

▉ As noted earlier, appellant specifically requested that Commander White be detailed to represent him. In detailing defense counsel to represent an accused in a general or special court-martial, a convening authority is under no obligation to consider the preferences of the accused. However, we cannot imagine how an accused can complain if his preferences are complied with. Thus, while the convening authority could properly have detailed White as the defense counsel for appellant's general court-martial even without any request by appellant that he do so, the request provided an additional justification for the convening authority's action.

▉ According to Article 27(a), a convening authority of a general or special court-martial may detail such assistant trial counsel and defense counsel "as he considers appropriate." To guide the convening authority in the exercise of his discretion in this regard, the Manual for Courts-Martial states:

> In general, it is desirable that as many assistant defense counsel as assistant trial counsel be detailed, and that officers be detailed as assistant defense counsel and assistant trial counsel who have comparable military experience and legal qualifications.

Para. 6d, Manual for Courts-Martial, United States, 1969 (Revised edition). A single trial counsel was appointed to prosecute appellant; and so the failure of the convening authority to appoint Lieutenant Kenney as an assistant defense counsel did not violate the Manual's intent.

▉ If appellant had requested that Lieutenant Kenney be appointed to serve as his individual military counsel under Article 38(b), we again would be confronted with a different issue. In that event, Kenney's commander—who in this instance was also the convening authority—would have determined whether the lawyer was "reasonably available." Among the factors that might have related to this determination were Kenney's previous familiarity with the case, his workload, and the circumstance that his service as counsel would not require substantial travel on his part or expense to the Government. While Article 38(b), as it then existed, contemplated that the individual military counsel would be the lead counsel and the detailed counsel would serve as "associate counsel," that relationship could be adjusted by the respective counsel in the best interests of their client. Certainly Commander White and Lieutenant Kenney would have been free to determine between themselves, with appellant's consent, what would be their respective roles at trial.

▉ If appellant had employed different tactics, perhaps he would have been provided by the convening authority with the services of both Commander White and Lieutenant Kenney. However, we must consider only the record before us, and on that basis we perceive no error or omission by the convening authority in providing counsel for Kelly. Moreover, in the present case we find no valid basis for complaint by appellant. He was supplied with a lawyer who—as is obvious even from the summarized record—defended him vigorously and skillfully. This attorney was from an entirely different command located in another part of the country. Therefore, he was not subject to any risk of command influence by the convening authority. While it might have been convenient for Commander White to have been provided the services of Lieutenant Kenney as "local counsel" in Boston, where the trial took place, the record contains no indication that the quality of the defense was impaired in any way because Commander White was assigned to a distant command. Indeed, in view of the vast number of charges that faced appellant at the outset and the ultimate outcome of the case, the results of the representation by Commander White might well be characterized as spectacular.

Accordingly, the decision of the United States Coast Guard Court of Military Review is affirmed.

Judge COOK concurs.

FLETCHER, Judge (dissenting):

This case involves review of the practice whereby the Government ascertains an accused's desire for individual military counsel and then formally appoints that attorney as detailed defense counsel for his court-martial. The precise question facing this Court is whether such action extinguishes any right of the accused to the service of a second military attorney who, at the behest of the convening authority, had previously assisted him with respect to the same criminal charges. The United States Coast Guard Court of Military Review concluded such a practice complied with Articles 27 and 38(b), Uniform Code of Military Justice, 10 U.S.C. §§ 827 and 838(b), respectively, and its operation here was harmless to appellant. 7 M.J. 681, 684–86 (1979). I disagree under the particular circumstances of this case.

In Boston, Massachusetts, during May of 1976, the Coast Guard began an investigation into events that eventually led to criminal charges against Chief Warrant Officer Kelly. Later, on June 25, 1976, he was informed of this investigation. On June 28, 1976, he was relieved of his duties. On that same day, Lieutenant Kenney, a Coast Guard lawyer attached at that time to this local command, was "made available" to appellant at his request to advise and confer with him. Lieutenant Kenney, in later correspondence, referred to himself as "Counsel for CWO V. B. Kelly," and received letters from the Commander, First Coast Guard District, Boston, Massachusetts, identifying him as "Counsel for CWO V. B. Kelly."

On the 10th of September, charges were preferred against Kelly. Prior to the Article 32[1] investigation, he requested the services of Commander F.W. White, a Coast Guard lawyer stationed at the Twelfth Coast Guard District Legal Office, San Francisco, California, as his individual military counsel. See Article 32(b), UCMJ, 10 U.S.C. § 832(b); Commander White was "reasonably available" and actually represented appellant at this formal pretrial investigation.

After the investigation, Kelly once again consulted with Lieutenant Kenney, both for advice as to his rights and to discuss who would represent him at trial. A telephone inquiry revealed the availability of Commander White, who was formally detailed as counsel two days later. Without entering into the semantics of whether Commander White was detailed counsel (Article 27) or individual military counsel (Article 38(b)) and regardless of the denominative nature of the request for Commander White, it is sufficient to observe that he was appellant's choice as lead counsel. Subsequently, Commander White, on behalf of Kelly, requested that Lieutenant Kenney be assigned as assistant defense counsel. This request was denied "due to workload" by the Commander of the First Coast Guard District.

Turning first to the Coast Guard Regulation pertaining to the detailing of counsel, I observe that it specifically disallows the accused's naming of a specific counsel to be so detailed. If the Coast Guard had not attempted this nomenclative sleight-of-hand, disregarding their own regulation,[2] the Court would not now be called upon to resolve this issue.[3]

In any event, it must be conceded that Kelly could have been represented by two counsel if the Government had properly followed Articles 27 and 38(b), and Coast

---

1. Uniform Code of Military Justice, 10 U.S.C. § 832.

2. Coast Guard Military Justice Manual CG–488, chapter III, Para. 302–3: *Request by accused for "out-of-district" detailed defense counsel.* Subparagraph (c) provides:

   Convening authorities should insure that an accused is advised of this right [to counsel] prior to the detail of defense counsel. The

request must be in general terms, *and may not request the detail of a named individual. An accused's right to "out-of-district" detailed counsel is separate and distinct from his right to individual military counsel.* (Emphasis added.)

3. This regulation, by its wording, would exclude the advantages of having a local detailed counsel, as stated later in this opinion.

Guard Military Justice Manual CG–488. Excluding his unexercised option of hiring civilian counsel, the accused, after appointment of his detailed counsel, is entitled to a "military counsel of his own selection if reasonably available." In addition, the "detailed" counsel "shall, if the accused so desires, act as his associate counsel." [4] *See United States v. Jordan,* 22 U.S.C.M.A. 164, 46 C.M.R. 164 (1973). In other words, the accused may be satisfied to proceed solely with this detailed counsel; he may retain his detailed counsel and select, in addition, an available military counsel; or he may proceed with his selected military counsel alone.

Turning to the facts of this case, I am unwilling to postulate that Commander White was appellant's detailed counsel; thus under the stated law, leaving him only the option of Article 38(b) representation if reasonably available. Rather the facts show, in a self-evident fashion, that Lieutenant Kenney was in fact the detailed counsel as provided for under Article 27. Thus Commander White's representation of the appellant during the Article 32 investigation was as individual counsel. Because Lieutenant Kenney served Kelly as Article 27 counsel—forming an attorney-client relationship—only appellant, or good cause, could sever Lieutenant Kenney's obligations. *See United States v. Catt,* 1 M.J. 41, 48–49 (C.M.A.1975); *United States v. Jordan, supra; United States v. Murray,* 20 U.S.C.M.A. 61, 42 C.M.R. 253 (1970). *See also United States v. Rachels,* 6 M.J. 232, 234 (C.M.A.1979). Neither occurred in this case.

The attempt by the Coast Guard to use mere descriptive words to abate its actions should not suffice for this Court to find compliance with congressional enactments. Even though I believe the procedures used

by the Coast Guard were advantageous to the accused, I can find no language in Article 27 or 38(b) allowing a service to enlarge or narrow the actual terms of the law, especially by the mere use of designative terms. With this in mind, this Court's obligation is to determine if the purpose of Congress in legislating Articles 27 and 38(b) was satisfied, by examining the actions of the Government.

This is not to say that I ignore the language of the Code and proceed immediately to congressional history. Our obligation is to analyze the statute, not to psychologize Congress. Judge Learned Hand in *Cabell v. Markham,* 148 F.2d 737, 739 (2d Cir.), aff'd, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945), stated:

> [I]t is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning.

A charted reading of the two statutes in question reveals plainly what Congress wanted to accomplish. An accused shall have counsel at a court-martial with qualifications equal to those of the prosecution. He shall not stand before a court without a properly legally qualified trained person to aid him. But Article 38(b) [5] indicates a further possible role for the Article 27 counsel in the event that the accused chooses to use individual military counsel in a principal role: "[T]he defense counsel ... detailed, shall, if the accused so desires, act as his associate counsel." The object to be accomplished is confidential continuity of representation, while eliminating duplication of investigation and research. This continuity

---

4. Article 38(b), UCMJ, 10 U.S.C. § 838(b).

5. I would, here, register my personal disagreement with certain provisions of Article 38(b) which we are required to apply. To provide the possibility of an individually selected military counsel under Article 38(b) is, in my opinion, a costly act which is of largely redundant benefit to an accused. In most instances it is

used, and I think improperly, for leverage against the staff judge advocate and his command which must pay from its budget the expenses involved. Because of these costs and the fact that the accused is adequately represented otherwise, I think Congress should ultimately eliminate this feature, aligning the military system more closely with civilian practice.

can be beneficial to both the Government and the defense. *See generally United States v. Jackson,* 5 M.J. 223 (C.M.A.1978); *United States v. Tellier,* 13 U.S.C.M.A. 323, 32 C.M.R. 323 (1962).

Distance involved in our worldwide military deployment is frequently a major problem. Commander White was 3000 miles away from the scene of the alleged crimes and the place of trial. Here appellant was charged with wrongful sale of military property, larceny and wrongful appropriation of Government property, unlawfully obtaining use of government quarters and personal services, and wrongful solicitation of a false official statement, encompassed in a large number of specifications.[6] The convening authority's designated counsel, Lieutenant Kenney, was thus, indeed a "local counsel" in the civilian sense and his services were of great importance. *See United States v. Tellier, supra.* His on-the-scene investigation of the allegations, including but not limited to, interviewing witnesses, checking proposed exhibits, being readily available to talk with the accused for corroboration or denial of matters concerned with his defense, were prerequisite for a proper trial presentation. In saying this, I take nothing away from the talents of Commander White, for he did an excellent job of representing appellant under very adverse circumstances.

To tautologize, mere nomenclature imposed on counsel cannot displace by stratagem the actual character of the counsel. Within the objectives to be accomplished by the congressional enactments, Lieutenant Kenney stands as detailed counsel and Commander White as "military counsel of his [appellant's] own selection." As the appellant properly requested retention of Lieutenant Kenney in the role of associate counsel, a reading of Article 38(b) ineluctably compels the conclusion that he was entitled to his services.

The Court has constantly reiterated that the established attorney-client relationship is the principal factor which determines whether a military accused has been denied his statutory right to counsel. In the past, the Court has systematically held that the unlawful dissolution of an existing attorney-client relationship calls for reversal regardless of whether any prejudice was sustained. *United States v. Catt, supra; United States v. Eason,* 21 U.S.C.M.A. 335, 45 C.M.R. 109 (1972); *United States v. Andrews,* 21 U.S.C.M.A. 165, 44 C.M.R. 219 (1972); *United States v. Murray, supra; United States v. Williams,* 18 U.S.C.M.A. 518, 40 C.M.R. 230 (1969). I would not deviate from that rule here.

I would reverse the decision of the United States Coast Guard Court of Military Review.

---

6. These charges were alleged as violations of Articles 108, 121, and 134, UCMJ, 10 U.S.C. §§ 908, 921, and 934, respectively.